UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS ESTEVEZ,<br><br>                                        Petitioner,<br><br>v.<br><br>UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF CALIFORNIA, FEDERAL BUREAU OF PRISONS, WESTERN REGIONAL OFFICE, et al.,<br><br>                                        Respondents. | Case No.:  15-cv-02941-AJB-JLB<br><br>**ORDER:**<br><br>**(1) DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**(2) GRANTING RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(3) DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE**<br><br>(Doc. Nos. 45, 52) |

Pending before the Court are both Petitioner Jesus Estevez ("Estevez") and Respondents the United States Attorney's Office for the Southern District of California ("USAO"), the Federal Bureau of Prison, Western Regional Office ("BOP"), and the United States Marshal for the Southern District of California's ("USMS") (collectively referred to as "Respondents") motions for summary judgment. (Doc. Nos. 45, 52.) Both parties filed oppositions. (Doc. Nos. 55, 57.) On August 16, 2017, Estevez was granted permission to file a Sur-Reply, which was filed on September 7, 2017. (Doc. Nos. 59, 60,

62.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matters suitable for determination on the papers and without oral argument. For the reasons stated in more detail below, the Court **DENIES** Estevez's motion for summary judgment and **GRANTS** Respondents' cross-motion for summary judgment.

## I.    BACKGROUND

The contours of Estevez's complaint are simple—Estevez alleges that he has been denied access to records under the Freedom of Information Act ("FOIA"), the Privacy Act, and the California Public Records Act. (Doc. No. 33 at 5.)[1] The specific events leading up to the institution of this action are as follows.

On or around December 3, 1999, Estevez was transferred from Salinas State prison to federal custody in association with Grand Jury Proceedings in the Southern District of California.[2] (Doc. No. 33 at 6; Doc. No. 42-3 at 3.) Estevez was in state prison after being convicted during a jury trial of the following crimes in San Diego Superior Court Case Number SCD132864: (1) Assault on a Peace Officer in violation of Cal. Penal Code § 245(d)(2); (2) False Imprisonment of a Hostage in violation of Cal. Penal Code § 210.5; (3) Three Counts of Forcible Rape in violation of Cal. Penal Code § 261(a)(2); (4) Forcible Oral Copulation in violation of Cal. Penal Code § 288a(c); (5) Assault with a Semi-Automatic Firearm in violation of Cal. Penal Code § 245(b); and (6) Child Abuse in violation of Cal. Penal Code § 273a(a). (Doc. No. 52-1 at 11.) Estevez was sentenced to forty-three years and four months in prison. (*Id.*)

### A.    Inquiries with the Federal Bureau of Prisons

On February 5, 2014, Estevez sent a letter to the FOIA section of the BOP requesting

---

[1] Page numbers refer to the CM/ECF page number and not the number listed on the original document.

[2] Estevez contends that he was informed of his transfer from foreign government agents, who he later discovered were found dead. (Doc. No. 33 at 6, 25.) The Court notes that the article attached to Estevez's first amended complaint regarding these "agent deaths" refers to the death of three Mexican drug agents who were sent to Baja, California to investigate the "flow of heroin, cocaine and other drugs smuggled into the United States." (*Id.* at 25.)

documents pertaining to him. (Doc. No. 42-2 at 3.) On March 20, 2014, the BOP informed Estevez that his request had been received and was being forwarded to processing under Request Number 2014-05306. (*Id*. at 4; Doc. No. 52-1 at 11.) Subsequently, in a letter dated September 26, 2014, the BOP informed Estevez that they had located ninety-six pages of responsive records of which fifty-six were released in their entirety, thirty pages were released with certain information redacted, and ten pages were withheld in their entirety. (Doc. No. 42-2 at 7.) In regards to the ten pages, the BOA stated that it withheld these documents from full disclosure under the following exemptions: 5 U.S.C. §552(b)(7)(C) and (b)(7)(F). (*Id*.)

On October 2, 2014, Estevez filed an appeal in regards to the ten documents that were withheld in their entirety. (*Id*. at 8.) Thereafter, on April 13, 2015, the Office of Information Policy ("OIP") responded to Estevez stating that it affirmed the BOP's actions as it had also determined that the records Estevez sought were excused from disclosure under exemptions 5 U.S.C. § 552(b)(7)(C) and b(7)(F). (*Id*. at 10.)

B.    Inquiries with the United States Marshal Service

Thereafter, on April 18, 2015, Estevez sent a letter to the USMS requesting documents pertaining to him in Grand Jury Proceedings 99-GJ-0131. (Doc. No. 42-1 at 1–2.) On October 19, 2016, the USMS, by letter, notified Estevez that they had conducted a search for responsive records to his request and found a total of two pages. (*Id*. at 8.) However, the USMS decided to release one page with redactions based upon exemption 5 U.S.C. § 552(b)(7)(C). (*Id*.)

On November 8, 2016, the OIP received a letter from Estevez challenging the USMS' decision to redact information from the single page while also questioning the adequacy of the USMS' search. (*Id*. at 10–11.) On January 8, 2017, the OIP affirmed the USMS' actions in withholding certain information and found that the USMS conducted an adequate and reasonable search for Estevez's records. (*Id*. at 14.)

C.    Inquiries with the United States Attorney's Office

Estevez also sent a letter to the Executive Office of the United States Attorneys

Freedom of Information and Privacy Staff ("EOUSA") on May 19, 2015, requesting documents pertaining to him in Grand Jury Proceeding 99-GJ-013. (Doc. No. 42-3 at 1–2; Doc. No. 52-1 at 13.) After an exchange of several letters, on August 21, 2015, the EOUSA informed Estevez that their records search revealed no responsive documents regarding his request. (Doc. No. 42-3 at 24.)

On September 15, 2015, the OIP received an appeal from Estevez challenging the adequacy of the previous search. (*Id*. at 25–26.) Subsequently, on October 26, 2015, the OIP, by mail, informed Estevez that they found that the EOUSA's search was adequate and reasonable. (*Id*. at 28.)

On May 11, 2016, Estevez wrote a letter to the USAO requesting documents under FOIA and the California Records Act. (*Id*. at 30.) Specifically, Estevez argued that he had been falsely convicted and that the "government agencies" were allowing agents to abuse their authority under color of law. (*Id*. at 31.) On May 24, 2016, the USAO sent Estevez a letter acknowledging receipt of his request and directing him to process any further inquiries with the EOUSA. (*Id*. at 32.)

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the

4

nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.     Summary Judgment in a FOIA Case

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (citation omitted). However, the typical standard for summary judgment is not sufficient because the facts in a FOIA case are rarely in dispute. *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). Instead, the standard for summary judgment in a FOIA case is a two-stage inquiry. *Los Angeles Times Commc'n, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006).

First, the court must determine if the agency has satisfied its burden in proving that it fully discharged its obligations under FOIA. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citation omitted). To establish this, the agency can demonstrate that it has "conducted a search reasonably calculated to uncover all relevant documents." *Id.* (internal quotation marks omitted). However, the question is not whether any relevant documents could exist, but rather whether the agency's search was adequate, measured by a reasonableness standard. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

Second, if the court determines that the initial burden has been met, the next step is to examine whether the agency has established that the information that it did not disclose falls within one of the nine FOIA exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *see also U.S.*

5

*Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (holding that the burden of the agency to justify the withholding of any requested documents "remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."). Thus, as a whole, to prevail on summary judgment in a FOIA proceeding, where the underlying facts and inferences are construed in favor of the FOIA requester, an agency must prove that it has met both of the foregoing burdens. *Nat'l Res. Def. Council*, 388 F. Supp. 2d at 1095.

## III.   DISCUSSION

Estevez contests both the adequacy of Respondents' efforts to perform a reasonable search as well as Respondents' decision to redact certain portions of the documents found. (*See generally* Doc. No. 45.) Respondents challenge Estevez on each of these points. (*See generally* Doc. No. 52.)

FOIA's "core purpose" is to inform citizens "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). FOIA stems from Congress' 1966 revision of the public disclosure section of the Administrative Procedure Act. *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976). This revision was called for because at that time no statute effectively provided for disclosure of information to the public by the "hundreds of [governmental] departments, branches, and agencies which are not directly responsible to the people . . . ." *SDC Dev. Corp. v. Mathews*, 542 F.2d 1116, 1119 (9th Cir. 1976). More specifically, since its inception, the Supreme Court has repeatedly stressed that the Act "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute on other grounds by C.I.A. v. Sims*, 471 U.S. 159 (1985).

Further, the Supreme Court has interpreted FOIA broadly, requiring "a philosophy of full agency disclosure" except where specifically exempted by the Act. *Id*. at 80 n.6. In total, there are nine statutory exemptions to the Act, each of which protects against the

6

disclosure of a specific set of sensitive government information. *See* 5 U.S.C. § 552(b)(1)–(9). These exemptions must be "narrowly construed" so as not to undermine the Act's basic purpose of public access. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

However, even when documents fall within one of the nine enumerated exemptions under FOIA, section 552(b) still requires disclosure of "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). The Ninth Circuit has specifically established that "it is reversible error for a district court 'to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.'" *Los Angeles Times Commc'n, LLC*, 442 F. Supp. 2d at 892 (citing *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979)).[3] Thus, "[n]on-exempt portions of a document must be disclosed unless the Court finds that they are 'inextricably intertwined with exempt portions' to such a degree that separating the two would 'impose significant costs on the agency and produce an edited document with little informational value.'" *Los Angeles Times Commc'n*, 442 F. Supp. 2d at 893 (citing *Willamette Indus., Inc. v. United States*, 689 F.2d 865, 867–68 (9th Cir. 1982)).

A.    Adequacy of the Searches

Respondents state in detail the alleged adequacy of all three searches completed by them in relation to Estevez's various FOIA requests. (Doc. No. 52-1 at 17–32.) In opposition, Estevez contends that Respondents have failed to carry their burden in this respect and that the declarations produced by them are conclusory and unhelpful. (Doc. No. 55 at 13–14.)

"An agency can demonstrate the adequacy of its search through 'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (citing *Zemansky*, 767 F.2d at 571). In fact, affidavits

---

[3] *Overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

submitted by an agency to demonstrate the adequacy of its search and responses to FOIA requesters are presumed to be made in good faith. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Moreover, "the failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 988 (9th Cir. 2009). Here, Respondents have met their evidentiary burden in demonstrating the adequacy of their searches.

First, as to the BOP's search, Respondents provide the declaration of Robin Carl, an employee of the BOP for over 12 years and a FOIA Specialist for the Western Regional Counsel's Office since August 2016. (Carl. Decl. Ex. 3, Doc. No. 52-3 ¶ 1.) Ms. Carl testifies that though she did not send out the request for the responsive records, it was determined by the person involved that any relevant documents would be in Estevez's Inmate Central File at MCC San Diego. (*Id.* ¶ 9.) The request was then sent to Senior Counsel Nellie T. Klein, who then forwarded the request to the Case Management Coordinator. (*Id.*) On September 17, 2014, after receipt of Estevez's Inmate Central File, the ninety-six pages of documents from the file were scanned and sent to the Western Regional Counsel's Office. (*Id.*)

Second, in regards to the search completed by the USMS, Respondents provide the declaration of William E. Bordley, an Associate General Counsel and a FOIA Officer of the USMS. (Bordley Decl. Ex. 4, Doc. No. 52-4 ¶ 1.) Mr. Bordley testified that on April 18, 2015, Estevez made a request under FOIA. (*Id.* ¶ 2.) While processing Estevez's request, it was determined that if documents responsive to his request existed, they would be found in two systems of records: the Prisoner Processing and Population Management/Prisoner Tracking System or the Warrant Information Network. (*Id.* ¶ 5.) A search was then placed in both of these systems using Estevez's name, social security number, and registration number. (*Id.*) In total, the search terms revealed two pages of material. (*Id.*) The two pages, one of which was released in full and the other released with redactions, were sent by mail to Estevez on October 19, 2016. (*Id.* ¶ 7.)

Finally, as to the USAO's search, Respondents produce the declaration of Crystaline

Smith, a Supervisory Paralegal Specialist for the Civil Division, USAO. (Smith Decl. Ex. 5, Doc. No. 52-5 ¶ 1.) One of Ms. Smith's responsibilities includes coordinating FOIA requests. (*Id.*) Ms. Smith testified that on or about July 6, 2015, her office received Estevez's FOIA request. (*Id.* ¶ 2.) According to Ms. Smith, the USAO uses a computerized docketing/case management system known as LIONS to track cases and matters for the entire district. (*Id.* ¶ 3.) On or about July 10, 2015, Ms. Smith conducted a LIONS case search for Estevez's grand jury case number 99GJ0131 and for any documents relating to Estevez. (*Id.* ¶ 4.) Her search ultimately resulted in no documents. (*Id.*) Ms. Smith then contacted the Grand Jury Coordinator, Norma Vaughn, who has access to all of the systems of records related to grand jury proceedings. (*Id.* ¶ 5.) Ms. Vaughn then conducted a search for Ms. Smith and also found no documents pertaining to Estevez's FOIA request. (*Id.* ¶ 6.)

Despite Estevez's belief that the declarations provided by Respondents are conclusory, (Doc. No. 55 at 13–14), the Court concludes the opposite. Presently, the Court finds that each declaration produced by Respondents adequately details the processes and procedures by which each agency undertook the search for records responsive to Estevez's requests. Additionally, each declaration describes in detail the databases that were searched and the search terms used. *See Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) ("[A]ffidavits describing agency search procedures are sufficient for purposes of summary judgment only if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith.") (citation omitted).

As to the USAO's search, which returned no responsive documents, the Court notes that Respondents illuminate that the USAO has a 10-year record retention policy. (Doc. No. 52-1 at 26; Smith Decl. ¶ 8.) Thus, if any of the relevant records to Estevez's FOIA request previously existed, they would have been destroyed as Estevez's grand jury proceeding was in or around 1999 and Estevez's request was filed in 2015, nearly 16 years later. (Smith Decl. ¶ 8.)

15-cv-02941-AJB-JLB

Estevez argues that the USAO's search was inadequate because the declaration did not provide more details on the e-mail sent to Norma Vaughn. (Doc. No. 55 at 18.) Additionally, Estevez contends that the declarant did not provide any information on the person that destroyed or archived the records, nor did they explain the LION computer system. (*Id.*) Unfortunately, the type of specificity requested by Estevez is not required under the applicable FOIA standards established through case law from this circuit. Instead, the Court reiterates that a search under FOIA is based off of a standard of adequacy, not perfection. *See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1082 (N.D. Cal. 2015) ("To comply with the FOIA, an agency must conduct a search <u>reasonably calculated</u> to uncover all relevant documents.") (internal quotation marks omitted) (emphasis added); *see also McCash v. C.I.A.*, No. 5:15-cv-02308-EJD, 2016 WL 6650389, at *6 (N.D. Cal. Nov. 10, 2016) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search . . . .") (citation omitted); *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate.").

Moreover, the Court notes that though there is evidence that the USAO may have destroyed certain records pursuant to its own internal policies, this does not render the search at issue unreasonable as there is no evidence of bad faith. *See Cal-Almond, Inc. v. U.S. Dep't of Agriculture*, 960 F.2d 105, 109 (9th Cir. 1992) (holding that "[a]bsent a showing that the government has improperly destroyed 'agency records,' FOIA does not require [] records to be recreated."); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (holding that FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."). Further, courts have held that they cannot order agencies to "make amends for any documents destroyed prior to the request because a FOIA request

pertains only to material in the possession of the agency at the time of the request." *Jones v. F.B.I.*, 41 F.3d 238, 249 (6th Cir. 1994).

Based on the foregoing, the Court concludes that Respondents have satisfied their first burden and demonstrated that they conducted adequate and reasonable searches in response to Estevez's various FOIA requests. *See Lahr*, 569 F.3d at 988–89 (finding declarations that described what files, paper records, and computer systems searched to be "sufficient to support the conclusion that the[] searches were reasonably calculated to uncover responsive records and were therefore adequate for the purposes of FOIA.").

Though Respondents have met their first burden to demonstrate that their search was sufficient, Estevez has not met his burden in establishing that there is an absence of a genuine issue of material fact that Respondents' search was inadequate. In Estevez's motion for summary judgment he makes limited conclusory statements including that Respondents are illegally withholding documents and that Respondents failed to adequately search for the documents he seeks. (Doc. No. 45 at 12–13.) Regrettably, these barren and completely unsupported allegations do not provide any facts to support Estevez's argument that the searches performed by Respondents were lacking, deficient, or done in bad faith. For instance, Estevez does not attempt to provide evidence that Respondents did not search all the locations requested or that Respondents purposefully hid documents relevant to his FOIA requests. The Court reminds Estevez that as the moving party on summary judgment, he "bears the burden of showing that there is no material factual dispute." *Mace v. Ocwen Loan Servicing, LLC*, 252 F. Supp. 3d 941, 945 (N.D. Cal. 2017). Estevez's motion for summary judgment, as whole, completely fails to meet this standard. Accordingly, Estevez's motion for summary judgment is **DENIED**.

B.     Respondents' Justifications for Redaction or Withholding

The next step at summary judgment in a FOIA case, as explained previously, is that the agency, through detailed affidavits, must demonstrate that the information withheld "logically falls within the claimed exemptions." *Minier*, 88 F.3d at 800 (citation omitted).

The Court will take the BOP and the USMS' justifications in turn.[4]

### i. Federal Bureau of Prison

After conducting their search, the BOP determined that there were ninety-six pages that pertained to Estevez's FOIA request. (Doc. No. 52-1 at 18; Doc. No. 55 at 9.) Of the ninety-six pages, thirty pages were redacted, and ten pages were withheld. (*Id*.) Estevez's appeal only challenged the ten pages that were completely withheld under exemptions 5 U.S.C. § 552(b)(7)(C) and (b)(7)(F).[5] (*Id*.; Doc. No. 42-2 at 8.) The Court notes that as of the date that Respondents filed their cross-motion for summary judgment, they have determined, upon further review, that nine of the ten pages withheld in their entirety may be produced to Estevez with only certain information redacted pursuant to the same exemptions referenced above.[6] (Doc. No. 52-1 at 18.)

The two exemptions employed by the BOP hold exceptions for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . or (F) could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(C), (F).

---

[4] As the USAO's search did not turn up any relevant documents, there were no documents withheld. Thus, the Court need not analyze whether the USAO's justifications for withholding were warranted.

[5] Respondents contend that as Estevez only appealed to the OIP in regards to the ten pages that were completely withheld that he has only exhausted his administrative remedies as to these ten pages. (Doc. No. 52-1 at 18.) However, the Court notes that the Ninth Circuit has held that "FOIA does not expressly require exhaustion, much less label it jurisdictional, nor does FOIA include exhaustion in its jurisdiction-granting provision. [] Therefore, exhaustion cannot be considered a jurisdictional requirement." *Yagman v. Pompeo*, 868 F.3d 1075, 1083 (9th Cir. 2017). However, as Estevez's appeal only took issue with the ten pages withheld in their entirety, the Court will devote its analysis to these specific pages.

[6] Respondents stated that they would provide the nine redacted pages to Estevez along with their motion, as well as file the documents with the Court under seal. (Doc. No. 52-1 at 18.) The pages were filed under seal on January 4, 2018, (Doc. No. 69), and Estevez states that he has received the nine redacted pages, (Doc. No. 55 at 9).

15-cv-02941-AJB-JLB

## a. Records Compiled for Law Enforcement Purposes

The threshold consideration whenever an agency asserts the Law Enforcement Purposes Exemption is "whether the agency may exercise a law enforcement function," a determination which turns on an examination of the agency itself. *Church of Scientology Int'l v. U.S. Internal Revenue Serv.*, 995 F.2d 916, 919 (9th Cir. 1993) (citation omitted). An agency with a "clear law enforcement mandate" need only establish a "rational nexus" between the enforcement of the federal law and the document for which exemption is claimed. *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995) (citation omitted).

Here, Ms. Carl testifies through her declaration that the BOP has a clear law enforcement mandate as the BOP's principal function is the housing of pretrial or presentence inmates pending criminal proceedings along with the execution of sentences in criminal cases. (Carl Decl. ¶ 12 (citing 5 U.S.C. § 552a(j)(2) (finding that it is a Department of Justice component that has as its principal function the enforcement of criminal laws includ[ing] correctional authorities).)) Further, by statute, Ms. Carl testified that the BOP is tasked with, among other things, the management and regulation of all federal penal and correctional institutions. *Id*. (citing 18 U.S.C. § 4042(a)(1).) Additionally, the BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community, including victims of crime. *Id*. (citing 18 U.S.C. §§ 3050, 4042.)

In sum, the Court finds that Ms. Carl's declaration establishes that the BOP's function and its purpose in compiling the documents at issue fall within a cognizable law enforcement mandate.

## b. An Unwarranted Invasion of Personal Privacy

When a FOIA request implicates the areas of privacy identified by a FOIA exemption, "[t]he statutory direction that the information not be released if the invasion of personal privacy could reasonably be expected to be unwarranted requires the courts to balance the competing interests in privacy and disclosure." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). In conducting this balance, courts apply a

15-cv-02941-AJB-JLB

three-step test. First, the court must determine whether the "disclosure implicates a personal privacy interest that is nontrivial, or . . . . more than [] de minimis." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 693 (9th Cir. 2012) (internal citation and quotations omitted), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). Second, if the right privacy interest is at stake, then the requester "must show that the public interest sought to be advanced is a significant one . . . and that the information is likely to advance that interest." *Favish*, 541 U.S. at 158. If both factors are present, the court must then balance the two. *Lahr*, 569 F.3d at 973.

Here, Ms. Carl's declaration lists off the various reasons for why each of the ten pages were withheld in their entirety. Specifically, pages 6, 7, 21, 29, 50, 53, and 57 were withheld as the documents included the names and register numbers of other inmates and the names and telephone numbers of staff members that were involved in the transportation of Estevez to federal custody. (Carl Decl. ¶¶ 14–17, 19, 20, 22.)

The remaining three pages—pages 33, 55, and 78—were withheld for various other reasons: (1) Page 33 was withheld as it stated Estevez's state charge on an application for a writ of habeas corpus involving the transport of Estevez to and from state and federal custody; (2) Page 55 was withheld as it contained an inmate injury assessment and follow-up report prepared by medical staff of an inmate involved in an altercation with Estevez; and (3) Page 78 is a copy of Estevez's Inmate Screening form, which contains information including gang affiliations and the name of the staff member conducing the intake interview form. (*Id*. ¶¶ 18, 21, 23.)[7]

Here, the evidence submitted by Respondents establishes that the disclosures would give rise to significant privacy concerns. *See Painting Indus. Of Haw. Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1482 (9th Cir. 1994) ("We must evaluate both

---

[7] The Court again highlights that nine of these ten pages have now been provided to Estevez in redacted form with only one page, page fifty-five, still being withheld in its entirety.

the public benefit and the potential invasion of privacy by looking at the nature of the information requested and the uses to which it *could* be put if released to *any* member of the public."). Specifically, the disclosures that Estevez seeks would identify inmates who were involved in altercations with Estevez while incarcerated, their register numbers, and in one case the medical history of another individual. Each of these individuals has a privacy interest in this "information concerning his or her person" and these "personal details" about himself or herself. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763; *see also Favish*, 541 U.S. at 166 (finding that law enforcement documents that contained information about persons interviewed as witnesses were to be given protection as "intimate personal data" as the "public [did] not have a general right of access [to the documents] in the ordinary course.").

Further, the document that redacted Estevez's grand jury charge may be deemed a disclosure that would subject Estevez to "possible embarrassment, harassment, or the risk of mistreatment [which] constitute[s] nontrivial intrusions into privacy." *Cameranesi v. United States Dep't of Def.*, 856 F.3d 626, 638 (9th Cir. 2017). In the same vein, the redactions present in the inmate injury assessment form and Estevez's inmate screening form prevents any possibility of persecution or stigma against Estevez or the other inmate for possible gang affiliations or for any risk of reprisal—exactly the sort of risks that courts have also recognized as nontrivial. *See id.* at 639 ("We have similarly held that the potential for harassment from third parties gives rise to a cognizable privacy interest.").

Accordingly, the Court concludes that Ms. Carl's declaration is sufficient to carry the agencies burden in demonstrating that the exemptions were narrowly applied and have a rational nexus to a law enforcement purpose. *Rosenfeld*, 57 F.3d at 809.

The Court now turns to step two—the balancing of the privacy interests identified at the first step against the public interest favoring disclosure. At this point, the requester bears the burden of showing that the (1) "public interest sought to be advanced is a significant one" and (2) that the information is "likely to advance the interest." *Favish*, 541 U.S. at 158. In determining the significance of the public interest, the primary inquiry under

15-cv-02941-AJB-JLB

the "FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (per curiam) (internal quotation marks omitted).

Estevez asserts that the information he seeks will assist him as well as shed light on the agency's performances of its statutory duties and will let "citizens know what their government is up to." (Doc. No. 55 at 14.) Further, Estevez contends that foreign government officials were murdered, thus his FOIA request is meant "to pierce the veil of administrative secrecy" and would serve public interest as there is evidence that the agencies are engaged in illegal activity. (*Id.*)

Altogether, Estevez's arguments are simply statements that repeat the law with no factual allegations or evidence to support his theories. Further, Estevez does not clearly establish what specific public interest his request is serving. *See Ray*, 502 U.S. at 178 (highlighting that the public interest in that case was "knowing whether the State Department ha[d] adequately monitored Haiti's compliance with its promise not to prosecute returnees . . . ."). Most notably, Estevez's conclusory statements fail to demonstrate that the redacted information, which includes the identities of other inmates and the identifying information of employees, would "add significantly to the already available information concerning the manner in which [the agency] has performed its statutory duties." *Cameranesi*, 856 F.3d at 640 (internal quotation marks omitted); *see also Forest Serv. Emp. For Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024–25 (9th Cir. 2008) (holding that disclosure of the identities would not "contribut[e] significantly to public understanding of the operations or activities of the government.") (citation omitted).

Estevez's letter to the BOP requested copies of all documents pertaining to him. (Doc. No. 42-2 at 3.) In response, Estevez was provided with all documents contained in his inmate file with some pages withheld in their entirety and others with minor redactions. Estevez then argues in a conclusory manner that the public interest lies in piercing the veil of administrative secrecy. However, as the Court sees it, the veil of administrative secrecy

has been pierced in this instant matter as all documents pertaining to Estevez's Grand Jury case and his transfer from state to federal prison have been given to him. Further, through this litigation process, nine of the ten documents withheld in their entirety have now been provided to Estevez with only minor redactions. As to the one page still withheld in its entirety, page 55, the Court finds that the page could not be redacted as the entire document related to an injury assessment of an inmate involved in an altercation with Estevez. (Carl Decl. ¶ 21 (*see Wiener v. F.B.I*, 943 F.2d 972, 988 (9th Cir. 1991) (holding that a district court must making a finding on "segregability, or the lack thereof, with respect to [a withheld] document.") (internal quotation marks and citation omitted)).

In sum, disclosing inmate names and register numbers, medical information of an inmate involved in an altercation with Estevez, and employee names and telephone numbers risks subjecting these individuals to significant invasions of personal privacy. This invasion of privacy is not, in this case, outweighed by any public interest alleged by Estevez. As a result, Respondents' motion for summary judgment on this point is **GRANTED**.

### ii.     *United States Marshal Service*

In a letter dated April 18, 2015, Estevez requested from the USMS "documents pertaining to [him] in the above entitled case [99GJ0131] . . . ." (Bordley Decl. ¶ 2.) Of the two documents found to be responsive to Estevez's FOIA demand, USMS released one page in full while the other page was released with redactions. (*Id*. ¶ 7.) USMS redacted this document under FOIA exemption (b)(7)(C), already described in great length above. (*Id*.)

### a.     <u>*Records Compiled for Law Enforcement Purposes*</u>

Respondents argue that the USMS is an agency with a clear law enforcement mandate. (Doc. No. 52-1 at 25–26.) Accordingly, Respondents need only demonstrate that there is a "rational nexus" between the law enforcement duties and the document that was withheld under exemption 7. (*Id*.) The Court agrees.

As explained in *Strolberg v. U.S. Marshals Serv.*, 350 F. App'x 113, 114–15 (9th

15-cv-02941-AJB-JLB

Cir. 2009) (Pregerson, J., dissenting), the protection of the federal judiciary is the responsibility of the USMS, including being authorized to provide courtroom security for the federal judiciary. *See* 28 U.S.C. § 566(e)(1)(A) ("The [USMS] is authorized to-(A) provide for the personal protection of Federal jurists, court officers, witnesses, and other threatened persons in the interests of justice where criminal intimidation impedes on the functioning of the judicial process or any other official proceeding . . . ."); *see also* 28 C.F.R. § 0.112(c) ("The Director, [USMS], is authorized to deputize . . . [s]elected employees of private security companies [to provide] courtroom security for the Federal judiciary . . . ."). Further, USMS materials containing names and initials of law enforcement officers and the register numbers of certain prisoners are considered compiled for law enforcement purposes as they are connected to the "receipt, processing, safekeeping, and transportation" of prisoners while in the USMS' custody. *See Jimenez v. F.B.I*, 938 F. Supp. 21, 29 (D.C. Cir. 1996).

### *b.    An Unwarranted Invasion of Privacy*

Next, the Court will balance the privacy interests in maintaining the confidentiality of the redacted one page against the public interest in its release.

Mr. Bordley states that the one page at issue redacted the names of third party individuals, specifically other prisoners. (Bordley Decl. ¶ 8.) For the same reasons *supra* pp. 14–15, the Court concludes that Respondents have satisfied their burden of demonstrating that the disclosure of the third-party name would implicate his or her personal privacy as it would affect either the individual's "control of information concerning his or her person," *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763, or constitute a "public intrusion[] long deemed impermissible under the common law and cultural traditions." *Favish*, 541 U.S. at 158; *see also Tuffly v. U.S. Dep't of Homeland Security*, 870 F.3d 1086, 1094 (9th Cir. 2017) (finding the disclosure of the "names of the released detainees would give rise to significant privacy concerns[]" under FOIA).

The Court must now evaluate the public interest in obtaining the disclosure. Unfortunately, after carefully examining Estevez's opposition brief, the Court finds that

15-cv-02941-AJB-JLB

the only public interest arguments he makes are those that this Court, pursuant to this Order *supra* p. 16, has already deemed insufficient, conclusory, and meritless. Thus, as already concluded by the Court, Estevez's various contentions such as shedding light on an agency's performance and seeking to pierce the veil of administrative secrecy are not contentions that demonstrate how disclosure of the names of the third-party individuals is a "public interest" or how the information will likely "advance that interest." *Favish*, 541 U.S. at 172. Estevez has now been provided with two documents one of which is the USMS Form 129, Individual Custody/Detention Report, which tracks a prisoner's custody, movements, court appearances, and medical care providers. (Bordley Decl. ¶ 5.) He therefore now possesses relevant information regarding his FOIA request—the names of the third party inmates would do nothing to further illuminate any of the USMS' actions in relation to Estevez's grand jury case number 99GJ0131.

Presently, Estevez has not provided any evidence to demonstrate that the public's interest only supports disclosure of the withheld names or that the disclosure is likely to advance the public's ability to evaluate future government actions. As a result, the Court need not balance the public interest with the private interests mentioned above. Thus, Respondents' motion for summary judgment on this matter is **GRANTED**.

In sum, Estevez's motion for summary judgment has put the Court to the task of balancing the privacy interests of other citizens with the public's right to government access. Here, the BOP, USMS, and USAO have demonstrated through nonconclusory affidavits that their searches were adequate. Moreover, the BOP and USMS have established that disclosure of the redacted information would subject individuals to significant invasions of personal privacy or expose Estevez and other inmates to stigma, harassment, or embarrassment. These privacy interests listed by the BOP and USMS are more than de minimis and are not outweighed by any public interest. Accordingly, the Court **GRANTS** Respondents' motion for summary judgment on Estevez's FOIA cause of action.

///

15-cv-02941-AJB-JLB

### C. Privacy Act

Estevez also brings a cause of action under the Privacy Act arguing that all of the Respondents violated his rights under the Constitution by refusing to do an adequate search. (Doc. No. 33 at 11–12.) Respondents claim that Estevez's requests to the BOP and the USMS were pursuant to FOIA <u>only</u> and his request to the USAO did not specify which statute his request was made under. (Doc. No. 52-1 at 28.) Thus, based on this alone, Respondents' motion for summary judgment should be granted. (*Id*.) The Court agrees.

Despite Estevez's complaint that argues that he pursues records under the Privacy Act, the record demonstrates the opposite. In fact, looking to the exhibits provided by Estevez himself, the Court points out that his letter dated July 8, 2014, specifically requested documents under FOIA and makes no reference to the Privacy Act. (Doc. No. 33 at 33.) Identical to this letter is Estevez's letter to the USMS, attached as Exhibit I to his motion, which states that he is requesting documents under FOIA. (*Id*. at 42; Doc. No. 42-1 at 1.) The Court notes that Mr. Bordley's declaration specifically states that Estevez did not make a Privacy Act request to the USMS. (Bordley Decl. ¶ 6.) However, to ensure maximum access to records, his request was analyzed under the Privacy Act. (*Id*.) Consequently, as Estevez never submitted a Privacy Act request to any of the agencies relevant to the instant matter, the Court lacks jurisdiction over this cause of action. *See Bosworth v. United States*, No. CV 14-0283 DMG (SS), 2016 WL 5662045, at *4 (C.D. Cal. 2016) ("To state a Privacy Act claim, the plaintiff must show (1) that a request for records was made; (2) that the request was denied; and (3) that such a denial or failure to act was improper under the Privacy Act.") (internal quotation marks and citation omitted).

Moreover, though the Court need not reach this point, the Court notes that under the Privacy Act "[i]ndividuals are permitted to access their records and request amendments to them." *Nat'l Aeronautics and Space Admin. v. Nelson*, 562 U.S. 134, 142 (2011) (citing 5 U.S.C. § 552a(d)(1), (2)). However, an exception to this rule is when an agency exempts any system of records if the system of records is –

> (2) maintained by an agency or component thereof which

performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests . . . (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. 552a(j)(2).

As already explained in great detail, *supra* pp. 11–19, the Court has already established that Respondents collected the information at issue under a clear law enforcement mandate. Further, the foregoing statute clearly provides exemptions to the Privacy Act for records stored in the Inmate Central Records system and records stored in the Population Management/Prisoner Tracking System, both of which are systems that were searched on Estevez's behalf for his various FOIA requests. *See Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1046 (N.D. Cal. 2005) ("The Act also denies an individual access to records maintained by an agency whose principle function is the enforcement of criminal laws.").

Thus, based on the foregoing, the Court **GRANTS** Respondents' motion for summary judgment on Estevez's Privacy Act claim.[8]

///

///

///

///

---

[8] Estevez's complaint and his motion for summary judgment alleges a third cause of action under the California Public Records Act. (Doc. No. 33 ¶ 19; Doc. No. 45 at 9.) However, no further mention of this cause of action is made nor is any evidence produced to support this claim.

## IV. CONCLUSION

In light of the foregoing, the Court **DENIES** Estevez's motion for summary judgment and **GRANTS** Respondents' cross-motion for summary judgment in its entirety. Accordingly, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

**IT IS SO ORDERED**.

Dated: January 22, 2018

Hon. Anthony J. Battaglia
United States District Judge

15-cv-02941-AJB-JLB